IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-246-CR




ERNEST FOSTER, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT



NO. 39,763, HONORABLE JOE CARROLL, JUDGE 



 





 After finding the appellant guilty of murder, Tex. Penal Code Ann. § 19.02 (1989),
the jury assessed punishment at 33 years confinement and a fine of $5,000. In a single point of
error, appellant asserts that the evidence is insufficient to support a conviction of murder. 
Appellant's contention is bottomed on his assertion that the State failed to refute beyond a
reasonable doubt that appellant was acting under "sudden passion" provoked by the deceased. We
overrule appellant's point of error and affirm the trial court's judgment.

 Section 19.02 provides that a person commits murder if he "knowingly or
intentionally causes the death of an individual." However, the offense is voluntary manslaughter
if a person "causes the death of an individual under circumstances that would constitute murder
under Section 19.02 of this Code, except that he caused the death under the immediate influence
of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.04 (1989).

 Section 19.04 defines "sudden passion" and "adequate cause":



(b) "Sudden passion" means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which
passion arises at the time of the offense and is not solely the result of former
provocation.


(c) "Adequate cause" means cause that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient to
render the mind incapable of cool reflection.



 Dr. Robert Bayardo, Chief Medical Examiner for Travis County, testified that
Jimmy King died as the result of a stab wound that extended from King's left shoulder to his left
lung.

 It appears undisputed that appellant and others had been drinking heavily during
the day of December 6, 1990, at the apartment of Anacia Rivera in Killeen. Prior to King's
arrival at the apartment, Rivera and appellant had been arguing throughout the day. At the
request of Rivera, Charles Wright and Jason Hankins ejected appellant from the apartment,
resulting in a fight between Wright and appellant. Subsequently, Rivera allowed appellant to
return to the apartment. Following appellant's return, King arrived at the apartment. 

 Appellant testified that he (appellant) was "drunk" when King arrived. Appellant
related that problems with King always started when Rivera was present ever since Rivera lived
at appellant's apartment. Appellant had recently lived at Rivera's apartment. When asked about
an exchange of words with King on the occasion in question, appellant stated, "undoubtedly we
must have had some cross words." Appellant related that the altercation started when the
deceased pushed him into the wall in the kitchen. In an effort to keep King away from him,
appellant grabbed a knife on the kitchen counter and swung at King. Appellant has an artificial
leg, and according to appellant, King had injured his good foot when he pushed appellant against
the wall or counter. Appellant stated that he was very mad and afraid of King.

 Hankins, the only witness to the stabbing, testified that upon King's arrival at the
apartment, Rivera took King to another room where they began talking. Hankins described King
as angry and intoxicated when he arrived at the apartment. Appellant hollered "more obscenities,
using bad language" to Rivera, "or maybe both of them." When King came out of the bedroom, "I believe Jimmy [King] is trying to get Ernest [appellant] out of the house because
Anacia [Rivera] wants him out of the house." Hankins observed appellant and King arguing, but
he did not see any blows exchanged or any struggling or fighting. King told appellant Rivera
wanted him out of the house and appellant used bad language and cursed King. Hankins did not
see King shove appellant. Appellant backed up to the counter, King followed him and appellant
"reaches behind him and pulls open a kitchen drawer, pulls out a butcher knife, sticks Jimmy in
the shoulder." Hankins stated King did not have a weapon.

 Where the issue of sudden passion is raised by the evidence, the State must
disprove its existence beyond a reasonable doubt. Johnson v. State, 815 S.W.2d 707, 710 (Tex.
Crim. App. 1991); Gold v. State, 736 S.W.2d 685, 690 (Tex. Crim. App. 1987). The State may
present evidence to prove the lack of sudden passion; however, it is not sufficient to support a
finding of an absence of sudden passion based solely upon disbelief of the defendant's testimony. 
Johnson, 815 S.W.2d at 711; Gold, 736 S.W.2d at 689.

 A defendant's claim that he was scared of the deceased is insufficient to raise the
issue of sudden passion arising from an adequate cause. Gonzales v. State, 717 S.W.2d 355, 357
(Tex. Crim. App. 1986). For a claim of fear to rise to the level of sudden passion, the
defendant's mind must be rendered incapable of cool reflection. Id.

 When reviewing a challenge to the sufficiency of the evidence to support a
conviction, an appellate court must determine whether, viewing the evidence in the light most
favorable to the conviction, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Butler
v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989).

 The Court of Criminal Appeals in Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988), amplified on the correct way to apply the Jackson standard:



The court is never to make its own myopic determination of guilt from reading the
cold record. It is not the reviewing court's duty to disregard, realign or weigh
evidence. This the factfinder has already done. The factfinder, best positioned to
consider all the evidence first-hand, viewing the valuable and significant demeanor
and expression of the witnesses, has reached a verdict beyond a reasonable doubt. 
Such a verdict must stand unless it is found to be irrational or unsupported . . . by
the evidence, with such evidence being viewed under the Jackson light. Concrete
application of the Jackson standard is made by resolving inconsistencies in the
testimony in favor of the verdict.



 In Johnson, the court observed that a rational factfinder could decide that the
murdered wife's statements taunting the defendant husband with tales of her sexual escapades were
insufficient to constitute "adequate cause" or "sudden passion" to provoke a brutal beating that
resulted in her death when appellant did not as much as strike her earlier when she had threatened
to sleep with his best friend. Johnson, 815 S.W.2d 712.

 In the instant cause, the appellant had earlier been ejected from Rivera's apartment. 
Despite the fact that a fight had resulted from this incident, appellant later returned to participate
in the party. At the time the fatal stabbing occurred, there is conflicting testimony as to whether
there had been any physical contact between the appellant and the deceased. Hankin's version of
the events immediately preceding the fatal stabbing reflects that appellant backed up to the drawer
where the knives were kept, removed a knife from the drawer and stuck it into the deceased's
shoulder. While the evidence reflects an exchange of verbal abuse, the testimony of Hankins
reflects that appellant was the aggressor, appellant having directed obscenities to both Rivera and
the deceased.

 Resolving any contradictions in favor of the verdict, we find that a rational trier
of fact could find the absence of either "adequate cause" or "sudden passion" beyond a reasonable
doubt. We conclude there was sufficient evidence to support the jury's verdict of murder. 
Appellant's point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

[Before Justices Powers, Jones and Davis*]

Affirmed

Filed: January 15, 1992

[Do Not Publish]


* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).